**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------ x
JORGE YARUR BASCUÑAN; TARASCONA :
CORP.; HOFSTRA CORP.; INMOBILIARIA :
MILANO S.A.; INMOBILIARIA E INVERSIONES :
TAURO S.A.; INVERSIONES T & V S.A., :
                                                           :
                         Plaintiffs, :

-against- :
                                                           :   MEMORANDUM DECISION
DANIEL YARUR ELSACA; CRISTIAN JARA :   AND ORDER
TAITO; OSCAR BRETON DIEGUEZ; GM & E :
ASSET MANAGEMENT S.A.; FINTAIR :   15 Civ. 2009 (GBD)
FINANCE CORP.; EUWELAND CORP.; HAY'S :
FINANCE CORP.; CARY EQUITY'S CORP.; :
AGRICOLA E INMOBILIARIA CHAUQUEN :
LIMITADA; JOHN DOES 1–10; ALAPINJDP :
INVESTING CORP.; SAN INVESTMENT :
COMPANY LTD, :
                                                           :
                       Defendants. :
------------------------------------ x



GEORGE B. DANIELS, United States District Judge:

    Plaintiff Jorge Yarur Bascuñan, as well as several entities he owns and controls (the "Bascuñan Entities"), bring this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against Defendants Daniel Yarur Elsaca ("Elsaca"), several entities he owns and controls, and two of his associates Cristián Jara Taito and Oscar Bretón Diegues. (Second Am. Compl. ("SAC"), ECF No. 76, ¶¶ 6–26.) Plaintiffs allege that Defendants violated and conspired to violate RICO by engaging in numerous predicate acts of racketeering activity, including mail fraud, wire fraud, bank fraud, money laundering, and violations of the Travel Act, with the purpose and intent of misappropriating millions of dollars Plaintiff Bascuñan inherited from his late parents in the late 1990s. (*Id.* ¶¶ 1–3, 185–234, 236–39.) Plaintiffs also asserts several state law

causes of action for unjust enrichment, constructive trust, and accounting.[1]  (*Id.* ¶¶ 186–234, 236–39, 241–45, 247–50, 252–58.)

Defendants previously moved to dismiss the SAC in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (*See* Notice of Mot., ECF No. 84.)  Defendants argued dismissal was warranted because, among other things, the SAC fails to allege a domestic injury with respect to much of Defendants' alleged conduct.  (*See* Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Second Am. Compl., ECF No. 85, at 19–21.)  Defendants also contended that to the extent the SAC did allege a domestic injury under RICO, it impermissibly relied on an extraterritorial application of the RICO predicate statutes.  (*See id.* at 21–24.)  Defendants further argued that the SAC failed to adequately allege a continuous pattern of racketeering activity, as required to state a claim under RICO.  (*See id.* at 24–26.)  This Court granted Defendants' motion to dismiss, on the grounds that the SAC failed to allege a domestic injury, impermissibly relied on an extraterritorial application of RICO, and failed to adequately allege a continuous pattern of racketeering activity.  (*See* Mem. Decision and Order, ECF No. 110.)

---

[1] Defendants previously moved to dismiss the action for lack of personal jurisdiction and failure to state a claim under RICO, among other grounds. (*See* Notice of Mot., ECF No. 35; Defs.' Mem. in Supp. of Mot. to Dismiss the Am. Compl., ECF No. 36.)  After this Court heard oral argument on the motion, but before a decision was rendered, the Supreme Court issued an opinion in *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016).  In *RJR Nabisco*, the Court held, among other things, that RICO does not apply extraterritorially and a private party suing under RICO must therefore "allege and prove a domestic injury to business or property." *Id.* at 2111.  Applying a residence-based test for determining whether Plaintiff suffered a domestic injury, this Court found that Plaintiff had failed to allege an economic injury in the United States, as opposed to in Chile or the British Virgin Islands, where he and the Bascuñan Entities resided.  *See Bascuñan v. Elsaca* (*Bascuñan I*), No. 15 Civ. 2009 (GBD), 2016 WL 5475998, at *6 (S.D.N.Y. Sept. 28, 2016).  Accordingly, this Court granted Defendants' motion to dismiss, *id.* at *7, from which Plaintiff timely appealed, (*see* Notice of Appeal, ECF No. 68).  On appeal, the Second Circuit vacated *Bascuñan I* and remanded the case to this Court for further proceedings.  *See Bascuñan v. Elsaca* (*Bascuñan II*), 874 F.3d 806, 824–25 (2d Cir. 2017).  In doing so, the Second Circuit held as a matter of first impression that "when a foreign plaintiff maintains tangible property in the United States, the misappropriation of that property constitutes a domestic injury."  *Id.* at 814.  On remand, this Court granted Plaintiff leave to amend his complaint to meet the new domestic injury pleading standards set forth in *Bascuñan II*.  (*See* Order dated Dec. 13, 2017, ECF No. 75, at 1.)

2

Subsequently, the Second Circuit reversed this Court's decision, (*see* Mandate, ECF No. 115), and Defendants filed an answer to the SAC which included two counterclaims—one for *quantum meruit* and one for tortious interference, (*see* Defs.' Answer to the Second Am. Compl., ECF No. 119). Plaintiffs then filed a motion to dismiss Defendants' counterclaims on several grounds. (*See* Notice of Mot., ECF No. 128; Mem. of Law in Supp. of Pls.' Mot. to Dismiss Countercls. ("MTD Countercls. Mem."), ECF No. 129.) Specifically, Plaintiffs argued that with respect to the *quantum meruit* counterclaim, (1) Chilean law applies, but Chile does not permit *quantum meruit* claims; (2) if this Court applies New York law, the claim is barred by an express written contract; and (3) the claim is time-barred under the statute of limitations.[2] (MTD Countercls. Mem. at 8–15.)

This Court held oral argument on the motion on December 18, 2019. The same day, this Court issued an order granting Plaintiffs' motion dismissing Defendants' tortious interference counterclaim, and denying Plaintiffs' motion to dismiss Defendants' *quantum meruit* counterclaim. (Order, ECF No. 138.) Plaintiffs subsequently filed the instant motion, a motion for reconsideration of this Court's order denying Plaintiffs' motion to dismiss Defendants' counterclaim for *quantum meruit*. (*See* Notice of Mot., ECF No. 139; *see also* Pls./Countercl.-Defs.' Mem. in Supp. of Mot. for Recons. ("Recons. Mem."), ECF No. 140.) Specifically, Plaintiffs argue that (1) this Court acted with clear error by failing to apply New York's choice of law rules, and (2) there is no legal basis to estop Plaintiffs from asserting that Chilean law applies to the *quantum meruit* counterclaim. (Recons. Mem. at 1–5.) Plaintiffs' motion for reconsideration is DENIED.[3]

---

[2] This Court need not reiterate Plaintiffs' arguments relating to Defendants' counterclaim for tortious interference, as it is not at issue on Plaintiffs' motion for reconsideration.

[3] A complete factual background is set forth in this Court's opinion in *Bascuñan I*, the Second Circuit's decision in *Bascuñan II*, and this Court's memorandum decision and order dated September 6, 2018, with which familiarity is assumed.

3

## I.   LEGAL STANDARD

Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citation omitted); *see also* Local Civ. R. 6.3 (providing that movant must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked"). Grounds justifying reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted). A motion for reconsideration is, however, "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citations omitted); *see also Weiss v. El Al Isr. Airlines, Ltd.*, 471 F. Supp. 2d 356, 358 (S.D.N.Y. 2006) ("A motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue.").

## II.   RECONSIDERATION IS NOT WARRANTED

Plaintiffs have not asserted that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a "clear error" or prevent "manifest injustice." Instead, Plaintiffs attempt to take a second bite at the apple by regurgitating the arguments they made previously during oral argument and in their briefs in support of their

motion to dismiss. Plaintiffs therefore have not met their burden in demonstrating that this Court erred in applying New York's choice of law rules.[4]

Plaintiffs appear to argue that this Court applied New York law based solely on the fact that there is no claim for *quantum meruit* under Chilean law. (*See* Recons. Mem. at 2.) Moreover, although Plaintiffs agree that this Court acted properly in applying a center of gravity test, they argue that this Court misapplied the test because "not one of the five factors of the test points to the application of New York law." (*Id.* at 4.) The "five factors," per Second Circuit case law, include: the place of contracting, the location of the negotiation, the place of performance, the location of the subject matter, and the domicile or place of business of the contracting parties. *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2001). As the record clearly demonstrates, however, this Court considered the various factors in reaching its determination that New York law applies.

For example, this Court gave substantial weight to the fact that Plaintiffs have spent years arguing that this case is extremely tied to New York and New York law should apply to their claims, yet now claim that Chilean law should apply to the counterclaims. (*See* Tr. of Oral Arg. dated Dec. 18, 2019 at 4:18–23; 5:15–20; 10:12–16.) This Court further considered the location in which much of the business relationship and performance of the agreement occurred, (*Id.* at 5:13–20; 24:10–12), as well as the fact that "[Defendant Elsaca] performed [the relevant] work in New York [and] invested the money in New York." (*Id.* at 24:10–11.) Additionally, this Court noted that the business relationship at issue related to the investment of funds in New York, and that "a significant amount

---

[4] Plaintiffs appropriately acknowledge that this Court did not reach a determination as to whether they are estopped from arguing that Chilean law applies to Defendants' counterclaims. (*See* Recons. Mem. at 4 ("The Court does not appear to have adopted [Defendant Elsaca's] contention that Plaintiffs were judicially estopped from arguing that Chilean law applied to [Defendant Elsaca's] just-asserted quantum meruit claim.").) As such, and in light of the fact that this Court has determined that it did not commit clear error in finding that New York law applies under a center of gravity test, it need not reach a determination on this issue—particularly because it did not reach this issue previously on Plaintiffs' motion to dismiss.

5

of assets were invested in New York." (*Id.* at 22:12–13.) As the Second Circuit has noted, under the center of gravity test, "[t]he place of contracting and place of performance are given the greatest weight." *See, e.g.*, *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012). Plaintiffs cite no authority to support their argument that this Court committed clear error in applying the center of gravity test or in considering certain factors, but instead merely reiterate the arguments that this Court previously reviewed and found not to be persuasive. (*Compare* Recons. Mem. at 1–4, *and* MTD Countercls. Mem. at 9–10.)

### III. CONCLUSION

Plaintiffs' motion for reconsideration, (ECF No. 139), is DENIED. The Clerk of Court is instructed to close the motion accordingly.

Dated: July 22, 2020
New York, New York

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

6